--------o--------

THOMAS SALISBURY, Respondent, *v.* RENICK & PETERSON, Appellants.

1. *Bills and notes — Presentment — Reasonable time.*— The general rule in regard to presentment is that the bill must be presented within a reasonable time; and what will be a reasonable time must depend upon all the circumstances of each particular case.

2. *Bills and notes — Presentment — Reasonable time.*— A. purchased of B., at St. Louis, on the 9th of June, a bill of exchange on C., in New York, with the understanding that the bill might be cashed by A. while in New York, or returned and repurchased by B. at the option of A. No limit of time for the return of the bill was fixed upon. It was never presented to C., but was returned, for payment, to B. the 16th of October. Meanwhile, in August, C. had failed, and B. refused payment. *Held,* that the bill was not presented to B. within a reasonable time, and that he was not liable.

3. *Bills and notes — Agreement to return draft to drawer, if not used — Reasonable time.*— Where no time is specified within which a bill of exchange shall be returned to the drawer if not used, the law will imply a reasonable time.

4. *Bills and notes — Promise to pay, with full knowledge of laches — Effect of.*— The law seems to be well settled in this country that where no demand for the payment of a bill of exchange has been made, or notice of non-payment given, a promise to pay after maturity, with full knowledge of such laches, is binding on the party promising, and removes entirely the effect of any negligence in making the demand or in giving the notice.

*Appeal from St. Louis Circuit Court.*

*T. T. Gantt*, for appellants, relied upon Commercial Bank of Albany v. Clark, 28 Verm. 325, 329 ; Duvall v. Farmers' Bank, 9 Gill & J. 31 ; Commercial Bank v. Hughes, 17 Wend. 98–9 ; Breed v. Hillhouse, 7 Conn. 523 ; Hall v. Freeman, 2 Nott & McC. 479 ; Low v. Howard, 10 Cush. 163 ; Conroy v. Warren, 3 Johns. Cas., per Thompson, J., 262, and Kent, J., 264 ; Story on Bills, § 291 *et seq.;* Byles on Bills, 150, 159 *et seq.;* Sicc v. Cunningham, 1 Cow. 397, 406 ; Miller v. Hackley, 5 Johns. 385 ; Griffin v. Goff, 12 Johns. 423 ; Pars. on Bills, 621, note *z;* Story on Bills, § 320 ; Mogadara v. Holt, 1 Shower, 318 ; Borradaile v. Low, 6 Taunton, 93 *et seq.;* Lundie v. Robertson, 7 East. 231 ; Gibbon v. Coggen, 2 Campb. 188 ; Taylor v. Jones, 2 Camp. 105 ; Blesard v. Hirst *et al.*, 5 Bur. 2,670.

*Hill & Jewett*, for respondent.

WAGNER, Judge, delivered the opinion of the court.

It appears from the record that on the 9th day of June, 1857, Wm. Salisbury, plaintiff's assignor, purchased from defendants, who were bankers doing business in St. Louis, a bill of exchange on New York for $3,200. The bill was payable at sight, and directed to Beebe & Co., defendants' correspondents in the latter city. On the 24th day of August, 1857, the house of Beebe & Co. became bankrupt, and stopped payment, having in their hands a large amount of funds belonging to defendants ; and it is admitted by the facts in the case, that from the time the bill was drawn up to the time of the failure of Beebe & Co., they had in their hands funds belonging to the defendants in amount greatly in excess of the bill. The bill was never presented for payment, and in October of the same year Salisbury presented the same to the defendants and demanded that they should pay the money thereon.

The petition avers that it was agreed and understood at the time the bill was purchased that if Salisbury, who was going to Ohio on business, should not need the money, the defendants

would take back the bill, charging the usual rates of exchange. There is a further allegation that when the bill was presented for payment in October the defendants promised to take up and pay the same.

The answer contains an express denial of the allegations in the petition. The evidence is conflicting; and, under the instructions of the court, the jury found for the plaintiff.

It is not my province to comment on the evidence; but the law, as laid down by the court in its instruction, must be examined to see whether there was any misdirection. The first instruction given for the plaintiff tells the jury that if they believe from the evidence that at the time the draft was bought there was an understanding or agreement between Wm. Salisbury and either of the defendants that said Salisbury might do as he pleased about using or presenting the draft, and that if he did not want to use it, he might return it to the defendants, and they would pay it, deducting exchange or expenses, then defendants are liable, though said draft was not presented to Beebe & Co., if the draft was returned within a reasonable time to defendants. The general rule in regard to presentment is that the bill must be presented within a reasonable time; and what will be a reasonable time must depend upon all the circumstances of each particular case. (Story on Bills, § 231, and cases cited.)

Where a bill is payable at sight, or a certain number of days after sight, if the holder keeps it in his own possession for an unreasonable time, and thus locks it up from circulation, he makes the bill his own, and will have no remedy against any of the other antecedent parties upon the bill, from or through whom he derived his title. (Story on Bills.)

In the case of Linville *et al.* v. Welch, 29 Mo. 203, Ellis & Sturgis, bankers in Cincinnati, drew a bill of exchange in favor of Welch, upon the banking house of Loker, Renick & Co., St. Louis. The bill was dated October 24, 1854, and afterwards indorsed by Welch to Linville. From the notary's entry on the face of the bill and the protest, it appeared that the bill or draft was protested for non-payment on the 13th of December, 1854. On the day of the protest the notary sent notice of protest to the

Salisbury v. Renick et al.

indorsers. It appeared that the plaintiffs sent the bill to their agent, Matthews, at St. Louis, Mo., and he on the 17th of November, 1854, presented it to Loker, Renick & Co., who refused to pay the same. The banking house of Ellis & Sturgis had failed November 7, 1854. The agent returned the bill or draft to the plaintiffs, who sent the same back to the agent to present again. He did so on the 13th of December, and the bill was protested on that day for non-payment. There was no protest made on the first refusal of payment, though there was evidence that the defendant had notice of the first refusal. At the trial in the Circuit Court the jury were instructed that if they believed from the evidence in the cause that the bill was presented to Loker, Renick & Co. for payment in a reasonable time, that payment was demanded and refused, and that the defendant was notified of the presentment and refused to pay in a reasonable time, then they should find for the plaintiffs. The jury found for the plaintiffs, and on appeal to this court the judgment was reversed, Napton, J., speaking for the court, saying: "In relation to the presentment to Loker, Renick & Co., the law requires this to be made in a reasonable time, and what this will be must depend upon the circumstances of the case. That the presentation made in this case by Matthews, on the 13th of December, was not within reasonable time, would seem to follow from the fact that a previous presentation had been made on the 17th of November."

Although the case just cited and the one at bar are not entirely parallel or analogous, yet the former furnishes an aid as indicating how far courts will go in deciding upon the question of reasonable time. The court there held that a delay of less than seven weeks was unreasonable, and discharged the indorser. Here there was a delay of four months. There the bill was indorsed and put in circulation; here it was kept in possession and locked up. For upwards of two months after it was issued the drawees were perfectly solvent, and it would have been cashed on presentation; then they went down temporarily, dragging the drawers with them.

36—VOL. XLIV.

We are now to consider what effect is to be ascribed to the understanding between Salisbury and defendants at the time the bill was drawn. No time was specified within which the bill should be returned if not used; and in that case the law would imply a reasonable time. Reasonable time can not be defined with any certainty; it is such time as the law requires, but it must be varied to suit the exigencies of each particular case as they arise. A person buying a bill of exchange, contemplating a trip to the western territories, for the transaction of business, with the understanding that it should be taken back or repurchased on his return, if not needed, would be allowed a much greater length of time to return the bill than one going to Illinois or Ohio, where communication is rapid, and a few days sufficient to make the trip. The damage in this case was done by holding up the bill from the 9th of June till the 24th of August, a period of more than ten weeks. It was certainly not within the contemplation of the parties, at the time the agreement was made (if there was any), that the bill should be taken back at all events, regardless of the utter want of diligence and palpable negligence of one of the parties, by which the other sustained loss. In such a case there would be a complete want of mutuality, and it could not have been the intention of the parties at the time. Under the circumstances, I do not think that the presentment was made within a reasonable time, and it follows that the first instruction should not have been given.

The second instruction given the jury at the request of the plaintiff is as follows: "If the jury believe from the evidence that on or about the 16th of October, 1857, Wm. Salisbury returned the draft and called upon defendants to take it up, and that either of the defendants, knowing at the time that the draft had not been presented to Beebe & Co., and that Beebe & Co. had failed, promised said Wm. Salisbury, or Thos. L. Salisbury, after he became the owner of the draft, that they would pay the draft, then plaintiff is entitled to recover, though said draft never was presented to Beebe & Co."

In the English courts there has been great fluctuation and uncertainty on this subject, but the principle seems to be well

settled in this country that where no demand has been made or notice given, a promise to pay, after maturity, made with a full knowledge of such laches, is binding on the party promising, and removes entirely the effect of any negligence in making the demand or in giving the notice. (See 1 Pars. on N. & B. 595, where the cases are collected.)

Where, in a case in the Circuit Court, the judge charged the jury that if, "after the maturity of the note, the defendant promised the plaintiff or his agent to pay the same, having at the time of making said promise knowledge of the fact that the note had not been presented for payment, and that no demand had been made therefor, or notice of non-payment given, the defendant can not now set up, as a defense to said note, a want of such demand or notice," the Supreme Court of the United States held the charge correct. (Sigerson v. Matthews, 20 How. 464; see also Thornton v. Wynn, 12 Wheat. 183.)

In Harvey v. Troupe, 23 Miss. 538, the court says: "A promise to pay generally, or a promise to pay a part, or a part payment made, with a full knowledge that he has been released from liability on the bill by the neglect of the holder, will operate as a waiver and bind the party who makes it for the payment of the whole bill."

Deeming the law to be settled in accordance with the foregoing views, we see nothing objectionable in the instruction. This disposes of the case wholly, and it is unnecessary to examine or comment on the action of the court in giving and refusing instructions for the defendants.

As the first instruction was erroneous, and it is impossible to tell on which one the jury predicated their verdict, the cause will be reversed and remanded for a new trial in accordance with the views herein expressed.

Reversed and remanded. The other judges concur.