In re Dwight A. SIMMONS, Sr., Georgia L. Simmons, f/d/b/a B & G Cycle, Debtors.

**BORG–WARNER ACCEPTANCE CORPORATION and Bombardier Corporation, Plaintiffs,**

v.

**Georgia L. SIMMONS, f/d/b/a B & G Cycle, Defendants. (2 Cases)**

Bankruptcy No. 80–01048–BKC–TCB.
Adv. Nos. 80–0306–BKC–TCB–A; 80–0307–BKC–TCB–A.

United States Bankruptcy Court, S. D. Florida.

Jan. 26, 1981.

**64**

Angus J. Campbell, West Palm Beach, Fla., for defendants.

Gary W. Roberts, West Palm Beach, Fla., for plaintiffs.

Irving Gennet, Boca Raton, Fla., Trustee.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

In adversary proceeding Number 80–0306, two creditors seek a money judgment of $26,030 against the debtor and a determination that the claim is non-dischargeable under 11 U.S.C. § 523(a)(4) or (6). (C.P. No. 1). In Number 80–0307, the same creditors ask denial of the debtor's discharge under § 727(a)(2)(A). The facts alleged as the basis for both complaints are identical. (C.P. No. 1). The debtor has answered. (C.P. No. 3). The two matters were tried together before me on December 16, 1980, by agreement between the parties. This order, which incorporates findings and conclusions as authorized by B.R. 752(a), will be filed in each case.

Sections 523(a)(4) and (6) except from discharge any debt:

"(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny:" and

"(6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

Section 727(a)(2)(A) denies discharge if: (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(A) property of the debtor, within one year before the date of the filing of the petition."

The facts are not in significant dispute. In November, 1979, the debtor became a motorcycle dealer in Riviera Beach under a franchise from Bombardier. Borg-Warner financed her inventory through a floor plan agreement guaranteed by Bombardier, which provided for segregation of all sales proceeds in a separate trust account. She received and sold about 10 bikes before she closed her business in June, 1980 and filed for bankruptcy on August 15, 1980.

The promised trust account was established and all proceeds were deposited in the account. After a short interval, the debtor closed her other accounts and deposited all her receipts and made all her disbursements from the trust account. In March, 1980, the debtor sent her first payment to plaintiffs, a check for $13,934 drawn on the trust account. It bounced. At the time, there was about $11,500 in the trust account. The debtor's memory and records do not furnish a more precise figure. The check was never made good and no other payments were made.

Between March and June, when she closed her shop, the debtor spent all of the account balance, paying a variety of bills including living expenses, for herself, her husband and an adult son. She is unable to account with any accuracy for the money expended.

The debtor has had an eighth grade education. Though she has worked since 1976 in motorcycle shops, and for one year as a manager, she appears to have no accounting experience or skill and her family has been of no assistance in this respect. The debtor appears to argue that plaintiffs should not have trusted her (which is plainly obvious now), and that this circumstance excuses her conduct. This contention is rejected.

Section 523(a)(4) is applicable only to fiduciaries of an express formal trust as

distinct from constructive or implied trusts. The debtor held $11,500 in an express formal trust for the plaintiffs and knowingly misappropriated those funds. She knew that these funds were held by her in trust for the plaintiffs. She is indebted, therefore, in that amount for defalcation while acting in a fiduciary capacity. *Collier on Bankruptcy*, (15th ed.) § 523.14[1][c].

The fact that the exact amount of the misappropriated trust funds cannot now be fixed results from the debtor's failure to discharge her duty and cannot, therefore, defeat plaintiffs' claim. *ABC-Paramount Records, Inc. v. Topps Record Distributing Co.*, 5 Cir. 1967, 374 F.2d 455, 461. I find that $11,500 is the closest available reasonable estimate. (Deposition, p. 46).

In *Matter of Graham*, Bkrtcy. D.Neb.1980, 7 B.R. 5, 2 C.B.C. 695, 698, a colleague reached a contrary conclusion under similar facts, because:

"A fiduciary relationship required a separate account."

In that case none was established. In this case, one was. The fact that the debtor later comingled other funds in the trust account does not extinguish the fiduciary relationship.

Although § 523(a)(6) omits the term "conversion", it is clear from the legislative history that "injury" includes conversion. *Collier on Bankruptcy*, (15th ed.) § 523.-16[3], n. 35.

Plaintiffs must also establish that the debtor's conversion of their money was a "willful and malicious injury" to bring their claim under § 523(a)(6). For nearly eighty years the meaning of these terms has been clear from *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). It was held there that a husband's money judgment against his wife's adulterer was for a willful and malicious injury to the husband's property and, therefore, nondischargeable under § 17(a)(2) of the former Act. The pertinent provisions of § 17(a)(2) have remained unchanged since 1898 and are unchanged in the present Code, except for the elimination of the redundant reference to "conversion" noted above.

In *Tinker*, the court said:

"The act is *willful*, of course, in the sense that it is intentional and voluntary . . .

" . . . it is not necessary that the cause of action be based upon special malice . . .

"It was *malicious* because the injurious consequences which followed the wrongful act were those which might naturally be expected to result from it, and which the defendant Freche must be presumed to have had in mind when he committed the offense. . . . While it may be true that in his unlawful act Freche was not actuated by hatred or revenge or passion toward the plaintiff, nevertheless, if he acted wantonly against what any man of reasonable intelligence must have known to be contrary to his duty, and purposely prejudicial and injurious to another, the law will imply malice." (At pages 485–487, 24 S.Ct. at 508–509, emphasis supplied.)

However, the committee report of both the House and Senate, which are identical, contain the following comment with respect to the *Tinker* case:

"Paragraph (6) excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902), held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled." *Collier on Bankruptcy*, (15th ed.) § 523.-16[1], n. 15.

It is unclear how much of the definitions stated in *Tinker* the committee intended to overrule by the foregoing comment. As has already been noted, the words actually enacted remain unchanged. This raises the question whether a sentence in a committee report, which is itself ambiguous, overrules 75 years of consistent judicial interpretation of the identical terms used in the identical context. I think not.

In *F. T. C. v. Manager, Retail Credit Co., Miami Branch Office*, Cir. D.C.1975, 515

F.2d 988, 995, the applicable rule of statutory construction was stated in these terms:

"The proper function of legislative history is to resolve ambiguity, not to create it.

. . . . .

Where doubts exist and construction is permissible, reports of the committees of Congress and statements by those in charge of the measure and other like extraneous matter may be taken into consideration to aid in the ascertainment of the true legislative intent. But where the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the significance of the words employed."

See also *Board of Public Instruction of Palm Beach Co., Fla. v. Cohen,* 5 Cir. 1969, 413 F.2d 1201, 1203. In *Federal Electric Corp. v. Dunlap,* M.D.Fla.1976, 419 F.Supp. 221, 225–226, the circumstances were very similar to ours. A House Subcommittee report specifically disapproved the only decision construing a controlling federal statutory provision. However, the pertinent statutory language remained unchanged. Judge Young said:

"It is presumed that when Congress drafts a statute, it does so with full knowledge of the existing law and with great care for the precise language which must be used to achieve the desired result .... While it is true that the employment of terms in a statute which were taken from a preexisting statute dealing with a different subject matter should not rob the new statute of its independent vitality, the deliberate repetition of terms cannot be ignored in judging the substantive content of the new statute....

Congressional dissatisfaction with a Court's construction of an act must be expressed through subsequent legislation in order to change the law as indicated by the statute."

I believe it clear that the quoted comment in the committee reports should be disregarded and that *Tinker* and the legion of decisions following *Tinker* remain controlling. If not, the cryptic comment of the committees would render this statutory provision totally ineffective. This is clear from a colleague's decision, *In re Hodges,* Bkrtcy. B.C.W.D. Va.1980, 4 B.R. 513, 2 C.B.C. 566. Judge Pearson concluded that because the debtor spent funds he had willfully converted to feed and house his family and since he denied that he intended to hurt or harm his creditor, the plaintiff could not prove the conversion malicious. If that be so, § 523(a)(6) would only be applicable when the debtor concedes that he acted with special malice toward the plaintiff, a most unlikely event. It is, of course, fundamental that there is a presumption against interpreting a statute in a way which renders it ineffective.

■ With these considerations in mind, I find that the debtor's conversion was deliberate and intentional and, therefore, willful.

I also find that the debtor's conversion was malicious in that she acted wantonly, contrary to her duty and purposely prejudicial and injurious to the plaintiffs when, after her check to plaintiffs bounced, she spent plaintiffs' trust funds to pay other bills and to support her family. Her conduct was not the result of an honest but mistaken belief, nor was there any plausible basis for her to believe that she could restore plaintiffs' money. It was a deliberate injury to plaintiffs' property without cause or justification.

It follows that plaintiffs are entitled to judgment in No. 80–0306 and the debt for the converted property, $11,500, is non-dischargeable under § 523(a)(6), as well as (4).

It is alleged that the debtor also cannibalized seven bikes without authorization and about $4,000 in parts are missing. The debtor claims that the parts were used to service competition equipment sponsored by Bombardier and that Jeff Smith of Bombardier requested that she give this assist-

ance. I accept the debtor's testimony on this point.

█ Section 727(a)(2) requires an actual fraudulent intent, as distinguished from constructive intent, to hinder a creditor before discharge will be denied. *Collier on Bankruptcy* (15th ed.) § 727.02[3]. An intent to prefer other creditors is insufficient. An intent to defraud is not shown by the mere fact that the bankrupt collected money which he used for living expenses and to pay some other debts. *Matter of Rivas*, D.C.Fla.1920, 268 F. 690. I find no intent on the part of the debtor to hinder, delay, or defraud any creditor by the conduct which plaintiffs have alleged and proved here.

It follows that plaintiffs have failed to carry their burden in adversary proceeding No. 80–0307–BKC–TCB.

As is required by B.R. 921(a), separate judgments will be entered in No. 80–0307, in favor of the plaintiffs in the amount of $11,500 with a determination that such claim is nondischargeable and in No. 80–0308, dismissing the complaint with prejudice. Each party will bear its own costs.