**In re Gene Herbert MARSHALL, Debtor.**

**John E. POE, Plaintiff,**

v.

**Gene Herbert MARSHALL, Defendant.**

**Bankruptcy No. 81–02643–SW.**
**Adv. No. 81–1783–S.**

United States Bankruptcy Court,
W.D. Missouri, S.D.

Oct. 13, 1982.

---

A. Ronald Stewart, Springfield, Mo., for plaintiff.

William Wear, Springfield, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Plaintiff hired defendant, who was an auctioneer, to sell 72 acres of farmland which plaintiff owned. The auction was held on May 28, 1976 and the land was sold for $42,000. There was a cash down payment of $8,240, assumption of a $25,800 Federal Land Bank note and the balance was secured by execution of a second deed of trust. The down payment was taken by defendant who said he would hold it in his escrow account until the sale was closed.

On June 23, 1976, the day of the closing, defendant gave plaintiff a check for $6,560, representing the amount due after deduction of the auctioneer's commission. Plaintiff deposited the check on September 10, 1976. It was returned to him, marked insufficient funds. It was deposited a second time and returned for the same reason.

Plaintiff sued defendant on the check in the Circuit Court of Greene County, Missouri and recovered a judgment. When defendant filed his bankruptcy on August 25, 1981, the judgment was scheduled as an unsecured debt. Plaintiff then filed a complaint seeking to determine the dischargeability of this debt. An evidentiary hearing was held and the matter taken under advisement pending the filing of briefs which have now been received.

The evidence shows that defendant deposited $8,200 in his account on June 1, 1976. When he issued the check to plaintiff, the account balance was not sufficient to pay it. There was enough money to pay the check from June 28, 1976 through Au-

gust 8, 1976 and from August 20, 1976 through August 24, 1976 after which time the account did not have sufficient funds to pay the check.

Plaintiff argues that defendant had an obligation to maintain the account so that the check could be paid. He also contends that defendant misappropriated the funds and that the whole course of conduct makes the obligation non-dischargeable under Section 17 of the Bankruptcy Act. Defendant replies that he did not intentionally use the money, thought the check had been paid shortly after it was issued and never realized the account was insufficient to pay it.

The complaint alleges that "defendant ... appropriated ... proceeds entrusted to his care fraudulently to his own use; and that such action constituted fraud or defalcation while acting in a fiduciary capacity, embezzlement and larceny ...", conduct not dischargeable under Section 523(a)(4) of the Code, Title 11, U.S.C. The parties argue the issue, however, as though Section 17(a)(4) of the Bankruptcy Act was the controlling statute.

The Bankruptcy Code was enacted in 1978 to be effective on October 1, 1979. At that time, the repeal of the Bankruptcy Act was also effective. While the events which are the subject of this litigation occurred in 1976, the bankruptcy was filed in 1981. The Code governs the rights of the parties. Section 401ff, Title 11, U.S.C.

■ Section 523(a)(4) prohibits discharge "from any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." If the debt is to be found non-dischargeable for fraud or defalcation, plaintiff must show that defendant was acting in a fiduciary capacity. 3 Collier on Bankruptcy, ¶ 523.14 (15th Ed.). The relationship must be created prior to the act of wrongdoing and not be a result of the act. *In re Pedrazzini,* 644 F.2d 756 (9th Cir. 1981); *Matter of Dloogoff,* 600 F.2d 166 (8th Cir. 1979); *In re Weidman,* 18 B.R. 249 (Bkrtcy.E.D.Va.1982).

■ Under Missouri law, an auctioneer is an agent and not a fiduciary. *Pasley v.*

*Ropp,* 334 S.W.2d 254 (Mo.App.1960); *Shopen v. Bone,* 328 F.2d 655 (8th Cir. 1964). To convert an agency into a fiduciary relationship requires an agreement in addition to that of the agency arrangement. *Matter of Murphy,* 9 B.R. 167 (Bkrtcy.E.D.Va.1981). The precise question of whether there is a fiduciary relationship for purposes of Section 523(a)(4) is a matter of federal law, *Matter of Murphy,* supra; *In re Paley,* 8 B.R. 466 (Bkrtcy.E.D.N.Y.1981) but reference to state law is helpful. Here the relationship of auctioneer-seller contained none of the attributes of an express or technical trust. There was no fiduciary relationship between plaintiff and defendant when the property was sold.

Nor does the fact that defendant said he would put the money into an escrow account change the relationship into a fiduciary one. The Court concludes that the only representation which was made was that defendant would hold the money for plaintiff until the sale closed. He did that. The debt arose when the check was issued and not paid. Even if defendant had misrepresented the nature of the account, the vice in this matter is not in that but rather that the check was not honored at a later time. The commitment to hold the money did not create a fiduciary relationship. *In re Paly,* supra; *In re Dawson,* 16 B.R. 343 (Bkrtcy.N.D.Ill.1982).

■ Nor is the debt non-dischargeable merely because the debtor at various times had insufficient funds in his account to pay it. There is no evidence that he knew the check was not covered when he wrote it. At various times after the check was issued there were sufficient funds in the account to pay it. Absent some independent representation, the fact that the check was not good from time to time is insufficient to create a non-dischargeable debt promised on fraud. *In re Barth,* 4 B.R. 141 (Bkrtcy. W.D.Mo.1980); *Matter of Murray,* 7 B.R. 899 (Bkrtcy.W.D.Mo.1981).

The fact that plaintiff did not negotiate the check promptly does not excuse debtor's failure to keep sufficient funds in the account to pay the check. Section 400.3–

502, R.S.Mo.1969, that portion of the Uniform Commercial Code dealing with the presentment of negotiable instruments, provides that

"(1) Where without excuse any necessary presentment . . . is delayed beyond the time it is due

(a) any indorser is discharged; and

(b) any drawer . . . who because the drawee or payor bank becomes insolvent during the delay is deprived of funds maintained with the drawee or payor bank to cover the instrument may discharge his liability by written assignment to the holder of his rights against the drawee or payor bank in respect of such funds, but such drawer, . . . is not otherwise discharged."

Section 400.3–503(2) establishes 30 days as a reasonable time for presentment "of an uncertified check which is drawn and payable within the United States . . ." But that period is only a point of beginning of the analysis; it does not establish any absolute rule. Absent a showing of prejudice to the drawer, delays of several weeks may be acceptable. *Salisbury v. Renick*, 44 Mo. 554 (1869); *Light v. Kingsbury*, 50 Mo. 331 (1872); *Bartleman v. Humphrey*, 441 S.W.2d 335 (Mo.1969).

Regardless of the delay in presentment, "the check . . . is an absolute appropriation of so much money in the hands of his banker to the holder of the check, and there it ought to remain until called for; and, unless the drawer actually suffers by the delay, . . . he has no reason to complain of delay not unreasonably protracted." *Nelson v. Kastle*, 105 Mo.App. 187, 79 S.W. 730 (1904). *In Nelson* there was a delay of two and a half years and the verdict for defendant was affirmed as plaintiff has failed to show the drawer was not injured by the delay.

Here the plaintiff held onto the check because he was accumulating funds to purchase some real estate. For most of the time from the issuance of the check until it was presented, there was sufficient money in debtor's account to pay the check. The delay did allow debtor to use the money in the account for purposes other than the payment of the check and thus created the possibility of a non-dischargeable debt. There is no evidence as to what payments debtor made with those funds and no evidence that those payments had to be made as opposed to holding the funds for the check issued to plaintiff. Prejudice suggests the existence of events beyond the control of a party. Here debtor has made no showing of prejudice except that he had the opportunity to use the funds and carelessly did so. This is not the type of prejudice contemplated by the statute.

■■ There is little question but that debtor used the money in his account for his own use, thus depriving plaintiff of payment. Under Missouri law such conduct constitutes a conversion. "Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's right." *Houston v. Columbia Fed. Sav. & Loan Ass'n*, 569 S.W.2d 211, 214 (Mo.App. 1978). Proof of conversion can be shown "(1) by tortious taking; (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner, (3) by a refusal to give us possession to the owner on demand." *Arnold v. Prange*, 541 S.W.2d 27, 30 (Mo.App.1976).

Here, when debtor used the money in the account and depleted the balance so that the check to plaintiff could not be paid, he converted the money to his own use. The fact that he may have done so only carelessly is not controlling. *Schulte v. Florian*, 370 S.W.2d 623 (Mo.App.1963). It is the use of the property and not the motivation which creates the conversion. *United Missouri Bank South v. U.S.*, 423 F.Supp. 571, 577 (D.C.W.D.Mo.1976).

Section 17(a)(2) of the Bankruptcy Act, (Section 35, Title 11, U.S.C.) now repealed, provided that a debt arising out of willful or malicious conversion was not dischargeable. The legislative history of the Code reported in House Report No. 95–595, reprinted in App. 2 Collier on Bankruptcy 364 (15th Ed.), U.S.Code Cong. & Admin.News 1978, p. 5787 states that:

"Paragraph (4) excepts debts for embezzlement or larceny. The deletion of willful and malicious conversion from § 17a(2) of the Bankruptcy Act is not intended to effect a substantive change. The intent is to include in the category of non-dischargeable debts a conversion under which the debtor willfully and maliciously intends to borrow property for a short period of time with no intent to inflict injury but on which injury is in fact inflicted."

▮ To conclude that a debt arising from a conversion is not dischargeable the Court must find that the act was willful and malicious. *Matter of Murphy,* 9 B.R. 167 (Bkrtcy.E.D.Va.1981); *In re Simmons,* 9 B.R. 62 (Bkrtcy.S.D.Fla.1981). See also *In re Gumieny,* 8 B.R. 602 (Bkrtcy.E.D.Wis. 1981). In *Simmons* debtor wrote a check to creditor against her trust account. The check was not honored. Debtor subsequently spent the money for living expenses. The Court found both an express trust and willful and malicious conduct, the evidence showing that debtor knew the check was dishonored. In *Murphy* the Court also found a fiduciary relationship and a willful and malicious conversion.

In *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), the Supreme Court ruled that a non-dischargeable debt arising out of a conversion must be for willful and malicious conduct. That case involved an award of damages arising out of adulterous conduct. The Court pointed out that an act is willful if it is voluntary. An act is malicious if the consequences of the act "were those which might naturally be expected to result from it." 193 U.S. at 186, 24 S.Ct. at 509. It is not necessary that the act be actuated by a personal motive.

The decision in *Tinker* treats conversion as an act covered by what is now Section 523(a)(6) of the Code. It is also clear that conversion can fall within the definition of embezzlement specified in Section 523(a)(4). As a matter of statutory construction, the conduct described as conversion cannot mean one thing in one place in the statute and another thing in another place. The Court concludes, therefore, that for a conversion to be non-dischargeable, it must be willful and malicious.

The legislative history of Section 523(a)(6) states that:

"Paragraph (6) excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, 'willful' means deliberate or intentional. To the extent that *Tinker v. Colwell* . . . held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled." House Report No. 95–595, 95th Cong. 1st Sess. (1977) 363.

▮ This analysis is rejected by the Court in *Simmons,* supra. But here the evidence shows only that debtor used the money in his account. He denied knowing whether the check to plaintiff has ever cleared but assumed that it had shortly after it was written. Undoubtedly debtor had notice of dishonor sometime after September 10, 1976 but there is no evidence as to when. By then the money was spent. Clearly, within the language of the various decisions cited herein, debtors conduct was willful in that he deliberately had to write the checks and malicious in that he knew the writing of the checks would deplete the account eventually. Since there is no evidence that he wrote checks subsequent to the one given plaintiff knowing that plaintiff had not presented it, there is only evidence, at best, of a reckless disregard of plaintiff's rights.

The Court finds therefore that there was no willful and malicious conversion within the meaning of the statute and the obligation to plaintiff is dischargeable. Decisions, as *Simmons,* supra, and *Murphy,* supra, are distinguishable factually and as a matter of law since those courts found both knowledge and fiduciary relationships. See also *In re Hodges,* 4 B.R. 513 (Bkrtcy.W.D.Va. 1980); 3 Collier on Bankruptcy ¶ 523.16 (15th Ed.).

Plaintiff's Complaint to Determine Dischargeability is DENIED.

SO ORDERED this 13th day of October, 1982.