In re Cecil Wallace TOMLINSON and
Pauline Kilgore Tomlinson,
Debtors.

FLORIDA OUTDOOR EQUIPMENT,
INC., a Florida corporation,
Plaintiff,

v.

Cecil Wallace TOMLINSON, Defendant.

Bankruptcy No. 97–01946–3P7.
Adversary No. 97–239.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

April 21, 1998.

Michael J. Appleton, Winter Park, FL, for Plaintiff.

Robert Altman, Palatka, FL, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding is before the Court on a Complaint to Determine Dischargeability pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6). (Doc. 1). A trial was held on February 20, 1998. Based upon the evidence presented at trial, the Court enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

On March 18, 1997, Cecil Wallace Tomlinson ("Defendant") and Pauline Kilgore Tomlinson filed a voluntary joint petition for relief under Chapter 7 of the Bankruptcy Code. In its complaint, Florida Outdoor Equipment, Inc. ("Plaintiff") seeks a declaration of nondischargeability and entry of a money judgment for $18,919.42, including costs and reasonable attorney's fees. (Doc. 1).

Defendant was the sole stockholder and president of Lawn Power, Inc. ("Lawn Power"), a corporation formed in 1994. On May 23, 1994, Robert Tomlinson, Defendant's son, executed a Credit Application and Master Security Agreement ("Security Agreement") with Plaintiff on behalf of Lawn Power. (Plaintiff's Exs. 1 and 2). The Security Agreement gave Plaintiff a security interest in all goods and merchandise sold by Plaintiff to Lawn Power. Plaintiff duly perfected its security interest by filing the appropriate UCC–1 Financing Statements. (Plaintiff's Ex. 4). In addition, Defendant executed a Personal Guaranty unconditionally guaranteeing payment of all sums Lawn Power owed to Plaintiff. (Plaintiff's Ex. 3).

Shortly after the execution of the foregoing documents, Plaintiff began to supply goods and merchandise to Lawn Power with an invoice accompanying each shipment. Plaintiff also made periodic inspections of Lawn Power's inventory and sent monthly statements reflecting outstanding balances due.

The Security Agreement did not require the inventory sale proceeds to be segregated. Accordingly, Lawn Power maintained a single bank account in which all the sales proceeds were deposited. As a result, the proceeds commingled with funds that were not subject to Plaintiff's security interest.

In December 1996, after determining that Lawn Power was no longer a viable enterprise, Defendant offered to surrender the remaining inventory that had been supplied by Plaintiff. Plaintiff accepted the offer and recovered the equipment subject to its security interest. Subsequently, Plaintiff sent Lawn Power an invoice, dated February 24, 1997, indicating a remaining debt of $17,891.17. (Plaintiff's Ex. 9). Beth DeShetler, Plaintiff's credit manager, testified that in addition to the debt owed for the missing inventory, the invoice included late charges, interest and a restocking fee. However, the exact amount of the missing inventory could not be determined, because Plaintiff could not separate the restocking fee from the debt owed for inventory. The invoice also shows that Lawn Power, since June 1996, had repeatedly fallen behind in its payments to Plaintiff. (*Id.*). Additionally, Plaintiff's periodic inspections of Lawn Power's inventory revealed that some of the sale proceeds, subject to Plaintiff's security interest, had not been remitted to Plaintiff. Despite Lawn Power's poor payment history and its failure to remit all inventory sale proceeds, Plaintiff

continued to ship goods and merchandise to Lawn Power.

## CONCLUSIONS OF LAW

### 11 U.S.C. § 523(a)(4)

■ Plaintiff contends that Defendant's failure to remit the inventory proceeds constitutes embezzlement, and therefore the debt is non-dischargeable pursuant to § 523(a)(4) of the Bankruptcy Code. Section 523(a)(4) provides, in relevant part:

(a) A discharge under.... this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ...

11 U.S.C. § 523(a)(4) (1998). Plaintiff carries the burden of proving that the debt should be excepted from Defendant's discharge by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

■ Embezzlement, in the context of a dischargeability proceeding, has been defined as ... the "'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.'" *In re Kelley,* 84 B.R. 225, 231 (Bankr.M.D.Fla.1988) (quoting *Moore v. United States,* 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895)). Although proof of a fiduciary relationship is not necessary in order to prevail on an embezzlement claim, the plaintiff must demonstrate that the defendant appropriated funds or property for his own benefit and that he did so with fraudulent intent or deceit. *In re Rigsby,* 152 B.R. 776, 778 (Bankr.M.D.Fla. 1993).

■ An embezzlement claim requires a showing that the property, allegedly embezzled by the defendant, was the property of the plaintiff. Plaintiff cites the case of *In re Rebhan,* 45 B.R. 609 (Bankr.S.D.Fla.1985) in support of its claim that the inventory sale proceeds are its property. In *Rebhan,* the court held that the defendant's failure to remit sale proceeds, pursuant to an agreement between the parties, was an actionable

embezzlement, and therefore was a non-dischargeable debt under § 523(a)(4). *Id.* at 614.

The ruling in *Rebhan* was discussed in the case of *In re Nobel,* 179 B.R. 313 (Bankr. M.D.Fla.1995). In *Nobel,* the plaintiff entered into a floor plan agreement with the defendant's corporation, with the defendant executing a personal guarantee. *Id.* at 314. The agreement required the corporation to remit part of the sale proceeds when inventory was sold. *Id.* However, unlike *Rebhan,* the agreement did not provide for the segregation of the sale proceeds. *Id.* As a result, the court held that the proceeds were not the property of the plaintiff, finding that the absence of such a provision left the plaintiff with nothing more than a security interest in the proceeds. *Id.* at 315.

■ Finding the rationale of *Nobel* to be persuasive, the Court holds that the inventory sale proceeds are not Plaintiff's property. As in *Nobel,* there was no provision in the Security Agreement requiring Plaintiff to segregate the proceeds, thus the Court is disinclined to find that the inventory sale proceeds are Plaintiff's property. Because the inventory sale proceeds are not Plaintiff's property, Plaintiff cannot support a claim of non-dischargeability on the basis that Defendant embezzled the proceeds.

■ Additionally, Plaintiff failed to show, by a preponderance of the evidence, that Defendant intended to deceive or defraud Plaintiff when it failed to remit the inventory proceeds. Instead, the weight of the evidence suggests that Defendant merely sought to maintain the corporation as an ongoing enterprise. *See also In re Littleton,* 942 F.2d 551, 556 (9th Cir.1991) (finding that the defendants did not act with the intent to defraud where the dominant motivation was the survival of their business). As such, Defendant obtained no personal benefit by retaining the proceeds. In fact, Defendant's efforts to keep Lawn Power viable made him personally liable on the basis of his personal guarantee to Plaintiff.

Based upon the foregoing, the Court holds Plaintiff has not established by a preponderance of the evidence that Defendant's failure

to remit the inventory sale proceeds was embezzlement. First, the proceeds are not Plaintiff's property. Second, even assuming the proceeds are Plaintiff's property, the evidence was insufficient to show that Defendant intended to defraud Plaintiff of its security interest when Lawn Power failed to remit the funds. Third, the Court finds that Defendant obtained no personal benefit from retaining the proceeds, instead he risked personal liability so that Lawn Power could remain in business. Accordingly, Defendant's debt to Plaintiff is not excepted from discharge pursuant to 11 U.S.C. § 523(a)(4).

**11 U.S.C. § 523(a)(6)**

Section 523(a)(6) provides:

(a) A discharge under ... this title does not discharge and individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity; ...

11 U.S.C. § 523(a)(6) (1998). Plaintiff argues that the debt owed to Plaintiff fits within this exception because Defendant's failure to turnover the inventory sale proceeds was "willful and malicious." According to Plaintiff, Defendant deliberately retained the inventory sale proceeds while fully cognizant of Plaintiff's security interest in those proceeds.

In *In re Walker*, 48 F.3d 1161 (11th Cir. 1995), the Eleventh Circuit Court of Appeals had the opportunity to address what type of conduct constitutes "willful and malicious injury" under § 523(a)(6) of the Bankruptcy Code. The court concluded that "a debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Id.* at 1165.

Recently, the Supreme Court addressed the same issue in *Kawaauhau v. Geiger*, — U.S. ——, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Court focused its discussion on whether § 523(a)(6) covers acts, done intentionally, that cause injury, or only those acts done with the actual intent to cause injury. In *Kawaauhau*, the petitioner argued that

medical malpractice, attributable to negligent or reckless conduct, is a non-dischargeable debt pursuant to § 523(a)(6). *Id.*, — U.S. at ——, 118 S.Ct. at 976–977. However, the Court held that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at ——, 118 S.Ct. at 978.

First, the Court noted that "the word 'willful' in (a)(6) modifies the word 'injury,' indicating that non-dischargeability takes a deliberate or intentional injury, not merely a deliberate act that leads to injury." *Id.* at ——, 118 S.Ct. at 977. Second, the Court was concerned that a broader construction of § 523(a)(6) could cover a wide array of everyday situations in which an act is intentional, but injury is unintended.[1] *Id.* Finally, the Court was hesitant to adopt a broader reading of § 523(a)(6) that would render superfluous another portion of that same law. For example, if § 523(a)(6) were to cover intentional acts that cause unintended injury, it would obviate the need for § 523(a)(12), which specifically exempts debts for "malicious or reckless failure" to fulfill certain commitments owed to a federal depository institutions regulatory agency. 11 U.S.C. § 523(a)(12) (1998). *See also* 11 U.S.C. § 523(a)(9) (exempting debts for death or personal injury caused by debtor's operation of a motor vehicle while the debtor was intoxicated).

Since the Court's ruling on March 3, 1998, no court has used *Kawaauhau* to determine whether a debtor's conduct constituted a "willful and malicious injury" pursuant to § 523(a)(6) of the Bankruptcy Code. As a matter of first impression, this Court concludes that *Kawaauhau* stands for the proposition that a complainant seeking an exception to discharge pursuant to § 523(a)(6) must show that the debtor acted with the intent to cause injury. The Court notes, however, that Eleventh Circuit precedent indicates that a "willful and malicious injury" includes acts "substantially certain to cause injury." *Walker*, 48 F.3d at 1165. To the extent that *Walker* may be inconsistent

---

1. The Court gave the following example: "Every traffic accident stemming from an initial intentional act—for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic—could fit the description." *Id.*

with *Kawaauhau*, this Court strictly interprets *Kawaauhau* as requiring a showing of intentional and deliberate injury for purposes of § 523(a)(6). *See Kawaauhau*, —— U.S. at ——, 118 S.Ct. at 977. As such, Defendant's failure to remit the inventory sale proceeds must have been done with the actual intent to cause injury in order to fit within the dischargeability exception of § 253(a)(6).

Plaintiff has not established that Defendant's retention of the inventory sale proceeds was an act intended to cause Plaintiff injury. Rather, the evidence shows that Defendant merely sought to maintain Lawn Power as an ongoing enterprise, and did not keep the proceeds with the intent to deliberately injure Plaintiff. In fact, once Defendant realized the company was no longer viable, he voluntarily surrendered the remaining inventory to Plaintiff. Further, Plaintiff failed to adequately protect its interest by not requiring the sale proceeds to be segregated. Finally, Plaintiff took no action when its periodic inspections revealed that sale proceeds had not been remitted pursuant to the Security Agreement. Instead, Plaintiff continued to ship goods and merchandise to Lawn Power. In light of Plaintiff's apparent acquiescence to Defendant's conduct, the failure to remit the proceeds can hardly be characterized as "willful and malicious." *See also In re Wolfson*, 56 F.3d 52 (11th Cir.1995) (holding that the creditor's renewal and extension of additional credit to the debtor, after discovering the debtor's business practice of depositing all proceeds into general business account, prevented application of the "willful and malicious injury" discharge exception). Accordingly, Defendant's debt to Plaintiff is not excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

The Court will enter a separate judgment consistent with these findings of fact and conclusions of law.