**Harold Frank NEUMANN, d/b/a Universal Business Interiors, d/b/a Universal Contract Interiors, Inc., Debtor.**

**BRAUMAN PAPER COMPANY, Plaintiff,**

v.

**Harold Frank NEUMANN, d/b/a Universal Business Interiors, d/b/a Universal Contract Interiors, Inc., Defendant.**

**Bankruptcy No. 80–01803.
Adv. No. 80–0563.**

United States Bankruptcy Court,
E. D. Wisconsin.

July 24, 1981.

Robert J. Miller, Green Bay, Wis., for plaintiff.

Harold Frank Neumann, pro se.

Joseph J. Esser, Menomonee Falls, Wis., for debtor.

## MEMORANDUM DECISION

### C. N. CLEVERT, Bankruptcy Judge.

This matter came on for trial upon the filing of a complaint by Brauman Paper Company (Brauman) against the debtor Harold Frank Neumann seeking a denial of the debtor's discharge under 11 U.S.C. § 727(a)(2) and also seeking a determination of nondischargeability of a debt under 11 U.S.C. § 523(a)(2) and § 523(a)(4). Testimony was heard, exhibits were presented, and the parties have filed trial briefs.

### STATEMENT OF FACTS

Prior to trial the parties stipulated to most of the facts underlying this controversy, which may be summarized as follows:

The debtor, Harold Neumann, agreed to purchase carpeting from Brauman Paper Company for the purpose of reselling the carpeting to Kennelly Pharmacy. According to the terms of the purchase order, dated September 20, 1979, Brauman was to bill Neumann for the carpeting in the amount of $5,229.28, and Neumann was to bill Kennelly Pharmacy for the carpeting in the amount of $7,192.00. Kennelly was to issue a joint check to Neumann and Brauman, and upon receipt of the joint check Neumann was to sign the check, send the signed check to Brauman. Brauman was to then deduct its share of the check and send Neumann the balance.

To ensure payment by joint check, Brauman secured an agreement from Kenelly which provided that Kennelly was to issue a joint check to Brauman and Neumann for payment of the carpeting. Contrary to this agreement, on November 19, 1979, and on December 6, 1979, Kennelly Pharmacy issued single party checks, payable to Neumann only, in the amounts of $6,500 and $611.51.

Although Neumann expected to receive a two-party check, he never notified Brauman of his receipt of the checks and the checks were deposited into his business account.

On June 16, 1980, Brauman commenced a civil action against Harold Neumann and Kennelly Pharmacy for breach of contract and on July 30, 1980, Neumann filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

Nothing has been paid to Brauman for the carpeting, and the parties acknowledged that there is a debt owing to Brauman.

### ISSUES

At the trial of this matter, after all the evidence was presented, the court found that there was no evidence to support the plaintiff's objection to the debtor's discharge. Therefore, the primary question before the court is whether Neumann's debt to Brauman should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A) or § 523(a)(4). Resolution of this question turns upon whether the plaintiff has established that the debtor possessed the requisite fraudulent intent for a finding of nondischargeability.

### DISCUSSION

At the trial of this matter the plaintiff placed almost exclusive reliance on the con-

templated joint check arrangement as evidence of Neumann's fraudulent intent. In that regard it advanced two basic arguments:

(1) The plaintiff contended that at the time that Neumann entered the agreement to purchase carpeting from Brauman he fraudulently represented that payment would be made by issuance of a two-party check *or* that Neumann's concealment of receipt of the single party check constituted a false representation, false pretense or fraud contrary to 11 U.S.C. § 523(a)(2)(A).

(2) The plaintiff also contended that Neumann's failure to forward the check, contrary to the original understanding regarding the joint check arrangement, and his subsequent cashing of the check constituted embezzlement or larceny, contrary to 11 U.S.C. § 523(a)(4).

■ It appears to be well established that on dischargeability questions, the party seeking an exception to discharge has the burden of proving that *all* elements of the exception exist[1] and must prove fraud by clear and convincing evidence.[2] However, the plaintiff has failed to provide clear and convincing evidence of fraudulent intent under any characterization of the facts.

*11 U.S.C. § 523(a)(2)(A): Obtaining Money or Property by False Pretenses/False Representations.* 11 U.S.C. § 523(a)(2)(A) provides an exception to discharge if the debt is:

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by

(A) false pretenses, a false representation or actual fraud.

■ In order to prevail under § 523(a)(2)(A) the plaintiff must show that the following elements existed at the time that the property/money was obtained:

1. The debtor must have obtained the property by means of representations which he knew were false or which were made with reckless disregard of their truthfulness.

2. The debtor must have an intent to deceive, which may be inferred from the knowing or reckless representation made to induce another to transfer property to the debtor.

3. The creditor must actually and reasonably rely on the misrepresentation. [Citations omitted.] *Lader's Tiffany Feed & Supply Co., Inc. v. Thomas Kenneth Kohl*, 11 B.R. 470 (Bkrtcy.W.D.Wis., June 3, 1981); see e. g., *Carini v. Matera*, 592 F.2d 378, 5 B.C.D. 56 (7th Cir. 1979); *First Merchants National Bank of Radford v. Jones*, 3 B.R. 410, 6 B.C.D. 68, 70 (Bkrtcy.Va.1980).

■ The evidentiary standards for establishing fraud under § 17(a) of the Bankruptcy Act[3] continue to apply under § 523(a)(2)(A) of the Bankruptcy Code.[4] Thus, actual or positive fraud must be shown. Although silence or concealment of a material fact can constitute a false representation upon which actual fraud may be predicated,[5] the plaintiff has failed to present sufficient evidence establishing that Neumann's alleged false representations were accompanied by an intent to deceive

1. Fed.R.Bankr. p. 407; e. g., *Harris v. Fidelity & Deposit Co. of Maryland*, 7 B.R. 284, 288–89 (S.D.Fla.1980); *Snyder v. Snyder*, 7 B.R. 147, 149 (W.D.Va.1980); *Detroit Auto Brokerage v. Denson*, 7 B.R. 213 (Bkrtcy.E.D.Va.1980); *First Service Corp. v. Schlickmann*, 6 B.R. 281, 282 (Bkrtcy.Mass.1980); *Save-On Oil Co., Inc. v. Wise*, 6 B.R. 867, 869 (Bkrtcy.M.D.Fla.1980); *Henessey Cadillac Inc. v. Green*, 5 B.R. 247, 250 (Bkrtcy.N.D.Ga.1980); *Thomas v. Ashley*, 5 B.R. 262, 266 (Bkrtcy.E.D.Tenn.1980).

2. *Detroit Auto Brokerage v. Denson*, 7 B.R. at 216.

3. *Neal v. Clark*, 95 U.S 704, 24 L.Ed. 586 (1887); *Carini v. Matera*, 592 F.2d 378, 5 B.C.D. 56 (7th Cir. 1979).

4. The language in § 523(a)(2)(A) is a codification of case law under § 17(a), Bankruptcy Act, which interpreted 'fraud' to mean actual or positive fraud. 124 Cong.Rec. H 11,095–6 (daily ed. Sept. 28, 1978); S 17,412–13 (daily ed. October 6, 1978).

5. *Bank of Miami v. Saul Quintana*, 4 B.R. 508, 6 B.C.D. 464 (Bkrtcy.S.D.Fla.1980); see *Lader's Tiffany Feed & Supply Co., Inc. v. Thomas Kenneth Kohl*, 11 B.R. 470 (Bkrtcy.W.D.Wis. June 3, 1981).

Brauman. Moreover, Neumann was already indebted to the plaintiff at the time the alleged false representation occurred.

*11 U.S.C. § 523(a)(4): Embezzlement or Larceny.* § 523(a)(4) provides an exception for a debt:

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

According to *Collier on Bankruptcy* (15th ed. 1980) ¶ 523.14[3] at 523–106:

*Embezzlement* is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of property was lawful, or with he [sic] consent of the owner, while in larceny the felonious intent must have existed at the time of taking.

*Larceny* is the fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to his (the taker's) use without the consent of the owner. As distinguished

from embezzlement, the original taking of the property was unlawful.

The factual boundaries between acts constituting larceny and embezzlement have historically been problematic.[6] For this reason, the larceny and embezzlement exceptions to discharge shall be discussed together.

■ In the absence of evidence of unlawful intent, neither larceny nor embezzlement can be found to exist. Such is the case here. Larceny under Wisconsin law[7] or under common law standards[8] requires a showing that the taking was accompanied by specific intent to deprive the owner of his property. When property is delivered to a person by mistake, and the receiver takes it, a finding of larceny is permissible; however, the taking must be accompanied by the requisite intent.[9]

■ Similarly, embezzlement requires a showing of fraudulent conversion or intent to defraud the owner.[10]

---

**6.** Melli & Remington, *Theft—A Comparative Analysis of the Present Law & the Proposed Criminal Code,* 1954 Wis.L.Rev. 253, 255; *see,* e. g. 26 Am.Jur.2d, *Embezzlement* § 3 (1970); Baldwin, Criminal Misappropriation in Wisconsin—*Part 1,* 44 Marq.L.Rev. 253, 255–256 (Winter 1960–61).

**7.** § 943.20(1)(a), Wis.Stat. provides that:

(1) Whoever does any of the following may be penalized as provided in sub. (3):

(a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of such property.

Thus, the elements under Wisconsin law for theft (larceny) are:

(a) intentional taking, using, concealing, etc. of another's property without lawful authority; (b) taking, transferring, etc. without consent of the owner; (c) knowledge by the defendant that there is no consent; and (d) the taking, etc. was done with intent to deprive the owner permanently of possession. *Wisconsin Jury Instructions—Criminal,* # 1441 (Larceny) (1980, Regents, University of Wisconsin)

**8.** *See* 50 Am.Jur.2d, *Larceny* § 9 (1970).

**9.** *See* 50 Am.Jur.2d, *Larceny* § 26 (1970); *see also U. S. v. Rogers,* 289 F.2d 433, 438–439 (4th

Cir. 1961); *U. S. v. Posner,* 408 F.Supp. 1145, 1151–1153 (Md.1976); *Bergeron v. Peyton,* 106 Wis. 377, 380, 82 N.W. 291 (1900).

**10.** § 943.20(1)(b) Wis.Stat. provides that:

(1) Whoever does any of the following may be penalized as provided in sub. (3):

(b) By virtue of his office, business or employment, or as trustee or bailee, having possession or custody of money or of a negotiable security, instrument, paper or other negotiable writing of another, intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or writing without the owner's consent, contrary to his authority, and with intent to convert to his own use. A refusal to deliver any money or a negotiable security, instrument, paper or other negotiable writing, which is in his possession or custody by virtue of his office, business or employment, or as bailee, upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his own use within the meaning of this paragraph.

*See e. g., Wis. Jury Instructions Criminal* # 1444 Theft (Embezzlement) (1980, Regents, Univ. of Wisconsin); *State v. Legg,* 243 Wis. 449, 454, 10 N.W.2d 187 (1943); *State v. Witte,* 243 Wis. 423, 435–436, 10 N.W.2d 117 (1943); *Stecher v. State,* 202 Wis. 25, 231 N.W. 168

132

The establishment of a debtor-creditor relationship and nothing more would not be sufficient to establish a case under embezzlement.[11]

In this case, there is no dispute that the checks were delivered to Neumann, that Neumann was entitled to some of the funds, that the checks were deposited into Neumann's business account, and that at that time Neumann was indebted to the plaintiff. However, the plaintiff has failed to show that *at the time of* the alleged "taking" or alleged "conversion" of plaintiff's property, Neumann possessed the necessary state of mind required for a finding of larceny or embezzlement. Upon these facts alone, this court cannot find that the debtor fraudulently appropriated the property of the plaintiff. Therefore, this court finds that the plaintiff has failed to sustain its burden of proving that the debt in question arose from the debtor's larceny or embezzlement.

*11 U.S.C. § 523(a)(4): Defalcation by a fiduciary.* Plaintiff's assertion that the debtor's obligation must be excepted from discharge because of his defalcation as a fiduciary—which was first raised in its brief filed after trial—must also fail for lack of evidence.

As recently noted in *The Matter of Falk of Bethlehem,* 3 B.R. 266, 270 (Bkrtcy.N.J. 1980) and adopted in this court's decision in *National Bank of Detroit v. Olson,* 9 B.R. 52, 3 C.B.C.2d 822, 826 (Bkrtcy.E.D.Wis. 1981):

> The term 'fiduciary' has been consistently limited by the courts to apply only to express or technical trusts and not to trusts imposed ex maleficio, that is, a trust imposed because of an act of wrongdoing out of which the debt arose or a trust imposed by the law from contracts. *See Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 208, 11 L.Ed. 236 (1844); *In*

(1930); Melli & Remington, *Theft—A Comparative Analysis of the Present Law and the Proposed Criminal Code,* 1954 Wis.L.Rev. at 258–263.

*re Thornton,* 544 F.2d 1005, 1007 (9th Cir. 1976); *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510, 511 (2d Cir. 1937); 1A Collier on Bankruptcy, par. 17.24 (14th ed. 1978).... Where, however, the relationship is essentially one of debtor-creditors, the courts will not find that a trust relationship existed prior to the act of wrongdoing.

Accordingly, evidence showing that nothing other than a debtor-creditor relationship existed between Brauman and Neumann cannot sustain plaintiff's action under 11 U.S.C. § 523(a)(4).

## CONCLUSION

Based upon the foregoing, which shall constitute my findings of fact and conclusions of law in accordance with Fed. Bankr.R. 752,

IT IS ORDERED that defendant is entitled to a judgment of dismissal of the plaintiff's complaint.

11. *Hanser v. State,* 217 Wis. 587, 592, 259 N.W. 418 (1935); *Stecher v. State,* 202 Wis. 25, 29, 231 N.W. 168 (1930).