In re Dorothy STRZYZEWSKI, Debtor.

**Raymond STRZYZEWSKI, Plaintiff,**

v.

**Dorothy STRZYZEWSKI, Defendant.**

**Bankruptcy No. 83–01106.**
**Adv. No. 83–0870.**

United States Bankruptcy Court,
E.D. Wisconsin.

Aug. 20, 1984.

Anthony Johnson, Milwaukee, Wis., for plaintiff.

Dorothy Strzyzewski, pro se.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

Raymond Strzyzewski ("plaintiff") seeks to declare an obligation due to him from the debtor Dorothy Strzyzewski ("defendant") nondischargeable, pursuant to § 523(a)(2)(A) of the Bankruptcy Code.[1]

The plaintiff and defendant were married on November 28, 1978. Each party had been married previously. Their marriage has been short, but stormy. It finally culminated, not only in the commencement of this adversary action, but in the commencement of a divorce action which is still pending.[2]

---

1. § 523. *Exceptions to discharge.*
 (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
 \* \* \* \* \* \*
 (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

2. *In re the Marriage of Raymond A. Strzyzewski, Petitioner, and Dorothy P. Strzyzewski, Respondent,* Milwaukee County Circuit Court, Case No. 594 932.

**28**

In July of 1977 (before the parties met), the defendant and her father had purchased a restaurant and tavern known as "Pumpkin's Log Cabin" located in Hiles, Wisconsin. Shortly after this purchase, the defendant's father told her that he "wanted out of the business". Thereafter, the defendant accommodated her father by taking over the entire interest in the restaurant and tavern business and by assuming the full obligation on the loan from Crandon State Bank in connection with the original purchase. It was around the same time when defendant began to encounter her business difficulties that she and plaintiff met and started to see each other socially. The defendant told the plaintiff of her financial predicament. In September of 1977, plaintiff provided the defendant with $10,000.00 for use in the business in order to help her with her existing cash shortage. The defendant testified that the plaintiff told her that "this $10,000.00 will help you—use it as you see fit". The defendant further stated that she never promised to marry the plaintiff as an inducement for making this payment and that she never promised to turn over any interest in her business to him. The plaintiff, on the other hand, claims that he was promised an interest in the business in exchange for the $10,000.00 and for all monies which he had advanced thereafter. Unfortunately, the understanding between the parties regarding the purpose of the initial $10,000.00 payment (as well as all other payments made by the plaintiff) and regarding what the plaintiff had anticipated receiving in return for the payments, was never clearly defined. There was nothing in writing when the monies were advanced. It was a loose and informal arrangement which was further complicated by the fact that after the first $10,000.00 payment, all additional payments made by the plaintiff were remitted directly to the defendant's son, Gregory Cegielski. Mr. Cegielski operated the restaurant and tavern for his mother, and it was he who disbursed the payments received from the plaintiff.

The testimony revealed that the $10,000.00 provided by the plaintiff in October of 1977 was placed in a bank account in the defendant's name. It was shortly after the marriage of the parties in November of 1977 that the plaintiff became aware that the defendant had other obligations outstanding. The plaintiff thereupon demanded and in December of 1977, received a return of the initial $10,000.00 advanced, except for $2,600.00 which was applied (at the behest of plaintiff) to pay off a loan covering a balance due on the defendant's automobile. Thereafter, from time to time, plaintiff advanced additional funds to Mr. Cegielski for use in the restaurant and tavern. It is unclear from the testimony precisely how these payments were to be applied or how much was actually paid. The plaintiff testified it was his intention that the funds were to be used solely for mortgage payments on the restaurant and tavern, and that this intention was expressed to both the defendant and her son. However, while some of the funds were used for this purpose, other funds were also used for other business related expenses.

In April of 1978, in an effort to clarify the understanding regarding these payments, the defendant executed a promissory note in the sum of $11,000.00 to the plaintiff (the parties at that time having apparently agreed that at least this amount was due and should be recognized as a binding obligation in a written document.) The note was payable five years after the date of the note with interest at the rate of six per cent and contained the following statement:

"In the event the promissee (sic) shall predecease the promissor (sic) herein, this note shall be deemd (sic) to have been paid in full."

This note was drafted by Attorney Woodrow Kerr. With the exception of this note, no other documents—such as a security agreement or an assignment of an interest in the business to the plaintiff—were ever prepared and executed between the parties.

Eventually, both the marriage and the business soured. The defendant lost the tavern and the restaurant in a bitterly contested mortgage foreclosure suit and then filed her voluntary petition in bankruptcy on March 29, 1983. The plaintiff thereafter filed this action to declare the obligation due him nondischargeable. As a basis for his complaint, he has contended that he was promised a ⅛ interest in the business in exchange for all monies to be advanced for the business. He further claimed that there were other misrepresentations made by the defendant, including false statements that her mother was also putting $10,000.00 into the business and that all monies paid by the plaintiff (after the payment of the initial $10,000.00) would be directly applied to mortgage payments on the restaurant and tavern.

As previously noted, the precise purpose for which the monies were to be used is unclear. The parties acknowledged that a gift was never contemplated. This meant that either an investment or a loan (or a combination of both) resulted. The casual manner in which this transaction was handled makes it extremely difficult to decipher its true nature. However, the existence of a promissory note indicates that the establishment of a loan, in contrast to an investment, was contemplated. In particular, the statement on the note relieving the defendant of any further obligation in the event of the plaintiff's prior death, negated the concept that the plaintiff expected to receive an interest in the defendant's business. The lack of any other documents further supports this conclusion.

 In any event, whether the funds paid by the plaintiff were intended as an investment or as a loan, is really inconsequential. In either case, there was no fraud established. On dischargeability issues, the party seeking to establish an exception to discharge has the burden of proving that all of the elements of the fraud exception to discharge exist and these elements must be proven by clear and convincing evidence. *In re Neumann,* 13 B.R. 128 (Bankr.E.D.Wis.1981); *Matter*

*of Trewyn,* 12 B.R. 543 (Bankr.W.D.Wis. 1981). Exceptions to discharge are narrowly construed against the creditor and in favor of the debtor. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). The elements needed to establish fraud under § 523(a)(2)(A) have been elaborated in several Wisconsin cases. In *Matter of Schnore,* 13 B.R. 249 (Bankr.W. D.Wis.1981), Judge Martin stated, 13 B.R. at page 252:

"The appropriate standard requires that for a debt to be held nondischargeable, the following must have been true at the time the property was obtained:

1. The debtor obtained the property by means of representations which he knew were false or which were made with reckless disregard to their truthfulness;

2. The debtor had an intent to deceive, which may be inferred from the knowing or reckless misrepresentation made to induce another to transfer property to the debtor; and

3. The creditor actually and reasonably relied on the misrepresentation."

*See also, Carini v. Matera,* 592 F.2d 378 (7th Cir.1979); *In re Neuman, supra.*

The plaintiff's claims of misrepresentation by the defendant made with an intent to deceive when communicated, have not been established by clear and convincing proof. Reasonable reliance by the defendant has also not been proven. This is not the first time that this Court has encountered a situation involving a clash between family members over money matters. *See, Benson v. Benson,* Case No. 83–0621 (Bankr.E.D.Wis. filed April 12, 1984), where the debtor's parents brought an action against him to declare an obligation nondischargeable. In the instant case, as in *Benson,* the plaintiff's actions in advancing monies were not motivated by any statement made by the defendant, but by a sincere effort to help a loved one who was experiencing financial problems.

This Court has had an opportunity to observe the demeanor of the parties. The plaintiff is 73 years old. He formerly

**30**

worked at Western Machinery as a machine instructor for 20 years until his retirement in 1976. He possesses an eighth grade education and does not fit the pattern of a sophisticated individual wise in the business world. The defendant is 57 years old and did not graduate from high school. Her employment history discloses an individual who held a number of jobs which did not require the exercise of business judgment before entering the tavern business. She had worked as a checker and cashier. Her actions in opening a tavern and restaurant by investing $25,000.00 of her funds and thereafter assuming her father's interest in the business at a time when the financial outlook was bleak, without the benefit of any legal counsel, attest to her degree of naivete. She also appears to have been easily influenced by her son and to have relied extensively upon his judgment in making business decisions. In summary, both parties, while not exactly "babes in the woods", are certainly not "financial wizards" by any means.

Therefore, it is this Court's conclusion that the prerequisite elements to declare the debt nondischargeable under § 523(a)(2)(A) have not been established by clear and convincing proof and that the debt due from the defendant to the plaintiff is discharged. Accordingly, an order shall be entered dismissing this complaint.

This decision shall stand as and for findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.