In re Michael HABLE and Mary Hable, Debtors.

CHEVY CHASE F.S.B., Plaintiff,

v.

Michael HABLE and Mary Hable, Defendants.

Bankruptcy No. 88–02111–9P7.
Adv. No. 88–00241.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Oct. 19, 1989.

Bill B. Berke, Cape Coral, Fla., for debtors/defendants.

Jeffrey W. Leasure, Fort Myers, Fla., for plaintiff.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is the dischargeability, vel non, of the indebtedness of Michael Dennis Hable and Mary E. Hable (Debtors) admittedly due and owing to Chevy Chase, F.S.B. (Bank) in the amount of $3,956. The dischargeability of this obligation is challenged by the Bank on the basis that it represents an obligation incurred by these Debtors through false pretenses or actual fraud, thus, by virtue of Section 523(a)(2)(A), would come within the exceptive provisions of the general protection of the discharge.

The facts relevant to the resolution of the issues raised by the Complaint and the Answer, as established at the final evidentiary hearing, are as follows:

Sometime prior to September 23, 1987, the Bank solicited the Debtors as prospective credit card customers, and in the process mailed to the Debtors an application form for a Chevy Chase credit card (Plaintiff's Exhibit # 3). The application, which was approved in due course, granted a pre-approved credit limit to the Debtors of up to $4,000.

At the time the Debtors obtained the two credit cards, issued to both of them, Mr. Hable was employed by Gulf Coast Dodge as a car salesman. His compensation was on a commission basis only, although he received a draw against earned commissions, which at the end of each month was reconciled. If the commissions earned exceeded the draw, he received the difference. In the event it was less, it was carried as a negative balance against future commissions earned by him.

In November 1987, two months after the Debtors received the credit cards, Michael Hable quit his job, ostensibly, because the commissions earned were not enough to give him gas expenses. It is without dispute that Mrs. Hable obtained employment with UPS after Mr. Hable lost his position, and was paid nine dollars an hour compensation. However, her employment only lasted one month and it is without dispute that between November 1987 and February 1988 neither Mr. nor Mrs. Hable were gainfully employed, and the only actual funds which were at their disposal, other than funds obtained through the use of credit cards, was $2,700 obtained from the sale of an automobile in January 1988, and Mr. Hable's Christmas bonus settlement with his former employer for which Mr. Hable received $330. The payroll records of Gulf Coast Dodge indicate that the average income of Mr. Hable from May 1987 to November 1987 while he was employed by the dealership was $2,100 gross, which was, of course, subject to the ordinary deductions for withholding and Social Security taxes (Plaintiff's Exhibit # 9).

The credit card portfolio of the Bank (Plaintiff's Exhibit # 4) indicates that the Debtors obtained numerous cash advances beginning October 20, 1988, or a month after they received the credit card, totalling $3,000 during the time when both Debtors were unemployed and without income and clearly indicate that they actually lived on the cash advances obtained through the use of the credit card. In addition to the cash advances, they also incurred charges for purchases of goods reflecting 29 separate transactions during the relevant period. According to the statements received from the Bank (Plaintiff's Exhibit # 4), the initial minimum payment of $30 a month grew and by the end of December it was $178 a month. It should be noted, however, that in addition to the credit card issued by the Plaintiff, the Debtors also had eleven other credit cards which, according to the schedules filed with their Petition, indicated outstanding total obligations in the amount of $17,543.07, each of which called for a

monthly payment. According to the statement of income and expenses filed with the Petition for relief in April 1988, Mr. Hable's total disposable income was $1,399.67 against fixed obligations, disregarding any pre-petition debts, of $2,192.23, or a negative cash flow of almost $900 per month. The Debtor has four dependents, including himself, for which the Debtor was required to maintain a modicum of lifestyle. That is, to assure adequate housing and feed his three dependents. These are the relevant facts based on which the Plaintiff contends that it is entitled to a declaration that the amount owed by these Debtors represents a liability obtained by false pretenses in that at the time they made the charges by use of the credit card they knew that they had no capability to meet the obligations under the contract and pay the charges; or in the alternative, that they had no intention at the time they made the charges to pay for them.

It should be noted at the outset that the burden is on the Plaintiff to establish with clear and convincing evidence all operating elements of a claim of nondischargeability. *In re Neumann*, 13 B.R. 128 (E.D.Wis.1981); *In re King*, 96 B.R. 413 (D.Mass.1989). It is equally axiomatic that the provisions of the Bankruptcy Code dealing with discharge are remedial and should be construed liberally in favor of debtors and against creditors who challenge the scope and extent of the protection granted by the general bankruptcy discharge. The entire bankruptcy scheme was designed in part to give debtors a fresh start in life, free and unencumbered from pressing debts so they could become useful members of society. *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); *Local Loan v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

There is no question that these Debtors are indebted to the Bank in the amount claimed. It should be noted, however, that this is not a claim by the Bank of nondischargeability based on the fact that the Debtors exceeded their credit limit. As a matter of fact, it appears they never did. Cf., *First National Bank of Mobile v. Rod-*

*denberry*, 701 F.2d 927 (11th Cir.1983). The Eleventh Circuit in *Roddenberry* stated that a mere misuse of a credit card by exceeding the limit of the credit is not enough in and of itself. *Roddenberry* held that to sustain a claim of nondischargeability an obligation incurred by the cardholder cannot be removed from the protective provision of the bankruptcy discharge except upon showing that the privilege to use the card was effectively revoked and in spite of the revocation of the privilege to use the credit card, the cardholder continued to use the credit card. The Eleventh Circuit's holding in *Roddenberry* would not preclude a finding by this Court that a liability incurred by the Debtors in this instance is nondischargeable. This is so because if there is clear and convincing evidence that at the time the charges were incurred, the Debtors either knew that they were unable to meet the charges as a reasonable person should have known this fact; or in the alternative, that the Debtors had no intention to pay for the charges incurred through the use of the credit card would certainly warrant a declaration of nondischargeability pursuant to § 523(a)(2)(A) of the Bankruptcy Code.

Considering this last proposition first, it is clear that this is not a case which involves what is colloquially referred to as "loading up" on the eve of the bankruptcy. The fact of the matter is these charges were apparently incurred substantially prior to the Debtors' decision to seek bankruptcy. It is intimated by counsel for the Bank that they already consulted an attorney prior to incurring these charges. However, this record is devoid of any competent evidence to establish this fact. The only evidence which is relevant at this point would indicate that no cash advances were made after December and the purchases made by them during January, February and March, the months preceding the filing, were not out of the ordinary (Plaintiff's Exhibit # 4). While the Bank alleges in its complaint that these were purchases of luxury goods, apparently referring to Section 523(a)(2)(C), there is nothing in this record to indicate that any of these purchases represents luxury goods, with the possible exception of the purchase of a

watch which was, in fact, returned to the merchant by Mrs. Hable. Notwithstanding the foregoing, this Court is constrained to conclude that the Plaintiff utterly failed to present any proof as to which of the two Debtors obtained the cash advances and which of the two Debtors incurred the charges through the use of the credit card issued by the Plaintiff. The fact that they are both liable since they signed the credit application is of no consequence and is without significance.

Thus, while the liability exists, one cannot infer that the liability is a liability as a result of a fraud or a false pretense by both of them. It is a well-established proposition that the fraud cannot be vicariously visited on one, just because of the close association of a party, such as in the instance of a marital relationship of husband and wife. The Plaintiff had the burden to establish which amounts were incurred through fraud by which of the two Debtors.

This being the case, the Plaintiff has failed to establish or carry the burden required by law; and therefore, the complaint has to be dismissed with prejudice.

A separate final judgment will be entered in accordance with the foregoing.