In re H. Donald MORRISON and Anita M. Morrison, Debtors.

GENERAL ELECTRIC CAPITAL CORPORATION, Plaintiff,

v.

H. Donald MORRISON and Anita M. Morrison, Defendants.

Bankruptcy No. 88–6992–8P1.
Adv. No. 89–083.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 8, 1990.

Robert E. Messick, Sarasota, Fla., for plaintiff.

Harley E. Riedel, Tampa, Fla., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 11 reorganization case and the matter under consideration is a claim of nondischargeability asserted by General Electric Capital Corporation (Plaintiff), against H. Donald Morrison and Anita M. Morrison (Debtors). The Amended Complaint seeks a determination by this Court that a debt allegedly due and owing by the Debtors to the Plaintiff shall be declared to be nondischargeable.

The claims in Count I and Count III allege that H. Donald Morrison and Anita M. Morrison, respectively, committed fraud or defalcation while acting in a fiduciary capacity and thus, the claims are nondischargeable pursuant to § 523(a)(4) of the Bankruptcy Code. The claims in Count II and Count IV allege that H. Donald Morrison and Anita M. Morrison, respectively, converted the Plaintiff's funds willfully and maliciously with the intent to defraud the Plaintiff pursuant to § 523(a)(6) of the Bankruptcy Code.

The matter is raised by cross-Motions for Summary Judgment filed by the Plaintiff on all counts of the Complaint and by the Debtors only as to Counts I and III. The Plaintiff contends that there are no material issues of fact which are in dispute and, therefore, it is entitled to judgment as a matter of law. In opposition, the Debtor alleges that only the claims in Count I and III are appropriate for Summary Judgment in that the claims in Count II and IV raise an issue of intent by virtue of § 523(a)(6).

The following facts were established at the hearing on Motion for Summary Judgment as undisputed.

On December 11, 1986, Slade–Morrison R.V., Inc. (Slade–Morrison), entered into an Inventory Financing Agreement with Plaintiff. Slade–Morrison was engaged in the business of selling and trading recreational vehicles. It is undisputed that each of the Debtors were the sole directors, officers and 50% owners of the Corporation from the time they acquired controlling interest in Slade Morrison in 1980. Mr. Morrison was the president of the Corporation and was responsible for overseeing the sales department, including making sales himself and handling the floor plan financing. Mrs. Morrison, his wife, was the secretary-treasurer of the corporation, whose job responsibilities were limited to preparation of sales contracts, payroll and handling the daily correspondence.

Each of the Debtors signed a personal guarantee of the obligations due and owing by Slade–Morrison to the Plaintiff. Both parties had full access to all corporate books, records and bank statements. Slade–Morrison financed the purchase of the recreational vehicles on floor-plan arrangements with various financing institutions, including Plaintiff. The Contract between Plaintiff and Slade–Morrison provided, inter alia, that Plaintiff will have a security interest in all inventory financed by Plaintiff, including any proceeds derived from the sale of the units financed. Plaintiff duly perfected its security interest by filing a financing statement with the Secretary of the State (Plaintiff's Exh. B).

It is undisputed that certain units financed by Plaintiff (Exhibit B to Plaintiff's Amended Complaint), except Unit 007641, were sold by Mr. Morrison who deposited the funds received into the general operating account of Slade–Morrison in and in violation of the floor plan arrangement failed to remit to Plaintiff the proceeds of the sale, less the dealer's profit.

It is also undisputed that the proceeds from the sale of the units were used to pay the general operating expenses of Slade–Morrison, including the Debtor's salary, as

well as the payment of some individual obligations of the Debtors through the use of corporate checks. It appears that Mr. Morrison had been selling units out of trust since the early part of 1988 without informing Plaintiff. The Debtors filed their voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code on November 17, 1988.

Basically, these are the undisputed facts upon which the Plaintiff's claim in Count I and III of the Complaint that the debt due and owing to it by the Debtors should be declared to be nondischargeable pursuant to § 523(a)(4) of the Bankruptcy Code in that they committed fraud or defalcation while acting in a fiduciary capacity, and in the alternative, for willful and malicious injury by the Debtors to Plaintiff or the property of Plaintiff in Counts II and IV of the Complaint pursuant to § 523(a)(6) of the Bankruptcy Code.

■■■ It is a generally accepted proposition that exceptions to the discharge set forth in § 523 of the Bankruptcy Code must be strictly construed because the long established philosophy of all bankruptcy legislation is that the discharge provisions of all bankruptcy legislation is that the discharge provisions should be construed in favor of the debtor in order to achieve the congressional intent, which was to give financially distressed debtors a fresh start in life. *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 113–14, 27 L.Ed.2d 124 (1970). Thus, it is clear that the burden is on the creditor to prove any exception to the discharge. *In re Danns v. Household Finance Corp.*, 558 F.2d 114, 116 (2d Cir.1977); *In re Hunter*, 780 F.2d 1577 (11th Cir.1986). It is equally clear that the standard of proof imposed on the creditor is that of a clear and convincing evidence. *In re Neumann*, 13 B.R. 128, 130 (Bankr.E.D.Wis.1981); *see also, In re Magnusson*, 14 B.R. 662, 667 (Bankr.N.D.N.Y.1981); *In re Guilmette*, 12 B.R. 799, 802 (Bankr.D.R.I.1981); *In re Trewyn*, 12 B.R. 543, 545–56 (Bankr.W.D. Wis.1981).

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . . . .

The operating elements of a claim of nondischargeability under § 523(a)(4) is the existence of a fiduciary relationship established by contract as well as a wrong act or defalcation on the part of the Debtor while acting in that capacity.

It is the Plaintiffs contention that a fiduciary relationship was created by the Inventory Financing Agreement executed by the Debtors and the Plaintiff which in pertinent part reads as follows:

    . . . dealer agrees to repay immediately to GECC any advance of money made to finance the acquisition of any unit or inventory upon the earlier of . . . (b) the sale or other disposition by dealer of such unit of inventory and all sums received from such sale of inventory shall be received and *held in trust* by dealer until delivery to GECC. (Emphasis supplied)

The Plaintiff alleges that the Debtors were entrusted as officers, directors, guarantors and sole shareholders of the Corporation with delivering the proceeds belonging to Plaintiff upon the sale of a recreational vehicle unit financed by Plaintiff. Further, Plaintiff contends that the ability to sell a unit out of trust was made possible only by the fact that Plaintiff entrusted the Debtors with the manufacturer's statement of origins to the recreational vehicles. Thus, according to the Plaintiff, the Inventory Financing Agreement was sufficient to create a trust and, therefore, the Debtors acted in a financial capacity and when they failed to remit the monies due to the Plaintiff from the sale of units covered by the floor plan and, were guilty of defalcation.

In opposition the proposition urged by the Plaintiff, the Debtors contend that the Inventory Financing Agreement created nothing more than an ordinary commercial relationship and was insufficient to create

the trust relationship required by § 523(a)(4). The existence vel non of a trust required by law under § 523(a)(4) has been considered repeatedly by the Courts and the Supreme Court has in three opinions significantly narrowed the definition of "fiduciary". In *Chapman v. Forsyth*, 43 U.S. (2 How.), 11 L.Ed. 236 (1844), the court held:

In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of trust. But this is not the relation spoken of in the [Bankruptcy Act].... The act speaks of technical trust and not those which the law implies from contract.

The resulting obligation is not a trust because the parties to one of the documents has chosen to speak of it as a trust. *Chapman, supra.*

■ *Upshur v. Briscoe*, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1981), the Supreme Court held that even if an agreement contained language imposing a trust upon the debtor, it would not necessarily invoke the requisite basis for a fiduciary obligation. The court held that it was necessary to examine the nature of the obligation. In *Davis v. Aetna Acceptance Corp.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), the Supreme Court found that the debtor, who was an automobile dealer who borrowed money from a commercial lender to finance the purchase of his inventory, and who gave the creditor a trust receipt in which he agreed to hold the automobiles as the creditor's property and not to sell them without the creditor's written permission, was actually a mortgage in another form. The debtor must have been a trustee or fiduciary before the commission of the wrong and not a trustee as the result of the alleged wrong. *Davis v. Aetna Acceptance Co., supra; In re Short*, 818 F.2d 693 (9th Cir.1987); *Ragsdale v. Haller*, 780 F.2d 794 (9th Cir.1986).

■ Based on the foregoing, this Court is satisfied that the language contained in the finance agreement executed between the parties was insufficient to create a trust in the strict and narrow sense as

required to bar discharge under § 523(a)(4). Clearly, the relationship between the parties is one of a contractual relationship rather than a fiduciary relationship. In the case of *In re Levitan*, 46 B.R. 380 (Bkrtcy. E.D.N.Y.1985) the court after an extensive review concluded that a security agreement between a commercial creditor and a debtor is not transformed into a trust for purposes of § 523(a)(4) by the insertion of trust language.

This Court is not unmindful of the decision by the Southern District of Florida in *In re Rebhan*, 45 B.R. 609 (Bkrtcy.S.D.Fla.) which held that an agreement which required a debtor to hold the sales proceeds of financed vehicles in trust and to keep those proceeds separated and imposed a fiduciary duty upon the debtor with respect to the handling of those proceeds. In this case, unlike in *Rebhan*, there is nothing in this record to show that the Debtors were under duty to separate or segregate the funds obtained from the sale of units covered by the Floor Plan and that it was always understood that Slade–Morrison would be able to commingle with its general funds and to use those funds as it saw fit in the necessary operation of its business, and so long as it paid Plaintiff the monies required to be paid upon financed unit being sold. In *Rebhan, supra*, the trust document stated that "... the trustee agrees to keep the proceeds of any sale separate from all other funds, and the day of the receipt of such proceeds, to transfer to the entrustor." The clause in Paragraph 10 of the Inventory Financing Agreement in this case does not place corresponding duty on Slade–Morrison to segregate funds.

Based on the foregoing, this Court is satisfied that the Plaintiff's Motion for Summary Judgment should be denied as to Count I and Count III of the Complaint, and Debtors' Motion for Summary Judgment should be granted as to Count I and Count III of the Complaint.

■ This leaves for consideration the claims against the Debtors set forth in Count II and Count IV of the Complaint, which asserts a claim of nondischargeability pursuant to § 523(a)(6) of the Bankrupt-

cy Code. This Section excepts from the overall protection of the general bankruptcy discharge liability based on willful and malicious injury to an entity or to the property of an entity. The phrase, "willful", has been defined to mean the deliberate and intentional nature of the act committed. *See Matter of Petsch,* 82 B.R. 605 (Bkrtcy.M.D.Fla.1988); *In re Jacobs,* 47 B.R. 526 (Bkrtcy.S.D.Fla.1985). "Malicious" has been interpreted to refer to the conscious disregard of another's rights or that the debtor committed an act with knowledge that his act would result in harm to another. *See In re Petsch, supra,* and *Matter of Klix,* 23 B.R. 187 (Bkrtcy.E.D.Mich.1982).

In support of its claim, the Plaintiff alleges that the Debtors, while acting as officers of Slade–Morrison RV, Inc., willfully failed to remit to the Plaintiff funds obtained from the sale of the RV vehicles covered by the floor plan financed by the Plaintiff, *citing, Ford Motor Credit Co. v. Owens,* 807 F.2d 1556 (11th Cir.1987).

The question whether or not a corporate officer who guaranteed a corporate obligation would be liable for a nondischargeable debt for violating financing arrangements such as a floor plan or for unauthorized disposition of collateral has been subject to extensive litigation in the past. It is not surprising that the courts are in disagreement on this issue. Some held that an unauthorized disposition of a collateral or a failure to abide by the terms of a floor plan arrangement and to remit the funds to the financier is sufficient to sustain a claim of nondischargeability under § 523(a)(6) of the Bankruptcy Code. *Maguire v. Herzog,* 421 F.2d 419 (5th Cir.1970); *Ford Motor Credit Co v. Owens, supra.* Some other courts arrived at a different conclusion. Thus, the Eighth Circuit in the case of *In re Phillips,* 882 F.2d 302 (8th Cir.1989) concluded that before a viable claim can be established, it must be willful and malicious. In interpreting the term "malicious" the Court in *Phillips,* held that before the conduct can be described to be malicious, it had to be a scienter by the debtor that his willful conduct will, in fact, injure the entity who is asserting the claim of nondis-

chargeability. While the Eighth Circuit was satisfied in that case the debtor did act willfully, it concluded however, that whether or not a debtor was acting maliciously, the bankruptcy court must consider whether or not the debtor sincerely believed that the corporation would continue to operate and would generate sufficient revenues to remit the funds owed to the secured party. Applying this test, the Eighth Circuit concluded there was no competent evidence to establish malice.

This Court is satisfied that the ruling of the Eighth Circuit Court of Appeals in *Phillips* is more persuasive and the issue of malice cannot be resolved as a matter of law by summary judgment. Therefore, the Motion for Summary Judgment filed by the Plaintiff as raised in the claims in Count II and IV can not be granted, and the matter shall be set for final evidentiary hearing to consider the issue of malice as it relates to the claim set forth in these two Counts.

A separate Final Judgment shall be entered in accordance with the foregoing.