In re Lloyd Thomas HAIG.

CITIBANK (SOUTH DAKOTA), N.A., Plaintiff,

v.

Lloyd Thomas HAIG, Defendant.

Bankruptcy No. 91–22175–BKC–SMW.

Adv. No. 91–918–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida, Miami Division.

Dec. 16, 1991.

Alan Elkins, Elkins & Freedman, Ft. Lauderdale, Fla., for debtor.

Lloyd Thomas Haig, pro se.

Bruce Block, Kantor & Sapurstein, Miami, Fla., for plaintiff.

## MEMORANDUM OPINION

MARY DAVIES SCOTT, Visiting Judge.

THE CAUSE before the Court is an adversary proceeding in which Plaintiff, Citibank, N.A. ("Citibank") seeks, pursuant to 11 U.S.C. § 523(a)(2)(A), to determine the dischargeability of credit card debt. The debtor appeared personally and by counsel, Mr. Freeman, Esq. the Plaintiff appeared by counsel, Bruce E. Bloch, Esq.

This Court has subject matter jurisdiction over this proceedings pursuant to 28 U.S.C. §§ 1334(a) and 157(a). Moreover, the Court finds that this is a "core proceedings" within the meaning of 28 U.S.C. § 157(b)(1) as exemplified in section 157(b)(2)(I). Accordingly, this Court may enter a final judgment in the matter.

Plaintiff asserts debtor, Lloyd Thomas Haig, obtained credit and cash advances by false pretenses. The Court concludes for the following reasons that the debts owed to the Plaintiff should be discharged.

11 U.S.C. § 523(a)(2)(A) provides in pertinent part:

(a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud ...[1]

The purpose of the Bankruptcy Code is to provide an honest debtor an opportunity to "start afresh." *Transouth Financial Corporation of Florida v. Johnson,* 931 F.2d 1505, 1508 (11th Cir.1991) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). However, a debtor who attempts to abuse the relief afforded by bankruptcy proceedings is not entitled to the complete protection of the Court. *Id.* Indeed, the nondischargeability provisions were provided in order "that dishonest debtors would not benefit from their wrongdoing." *In re Collins,* 946 F.2d 815 (11th Cir.1991). The bankruptcy law grants a "fresh start" to the "honest but unfortunate debtor." *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). In this instance, the Court finds that Haig is an honest but unfortunate debtor entitled to the relief afforded by the bankruptcy process, specifically to a discharge of the debts at issue in this adversary proceeding.

"In order to preclude the discharge of a particular debt because of a debtor's false representation, a creditor must prove that: the debtor made a false representation with the purpose and intention of deceiving the creditor; the creditor relied on such representation; his reliance was reasonably founded; and the creditor sustained a loss as a result of the representation." *In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986). A showing of the debtor's reckless indifference to the truth is sufficient to demonstrate fraud or a false representation. *Birmingham Trust National Bank v. Case,* 755 F.2d 1474, 1476 (11th Cir.1985). In addition, Bankruptcy Courts have held debts nondischargeable where,

[1]. In addition, subsection (c) under this section of the Bankruptcy Code adds a presumption of nondischargeability as to consumer debts aggregating more than $500 for "luxury goods and services" incurred within forty (40) days before the order for relief or for cash advances aggregating more than $1000 obtained within twenty (20) days before the order for relief. 11 U.S.C. § 523(a)(2)(C). The Court, upon reviewing the documentary evidence and hearing explanations by the debtor does not find this section applicable to the instant facts.

among other inculpating circumstances, the debtor knows that he is unable to pay for them or has no intention of paying for them, *See, e.g., In re Hable,* 107 B.R. 356, 358 (Bankr.M.D.Fla.1989).

■ The testimony and documentary evidence revealed the following facts. Prior to 1989, the debtor enjoyed a fairly substantial income: in 1987 his adjusted gross income was approximately $30,000; in 1988, it was over $52,000. However, in 1989, his income dropped to just over $10,-000. Then, in 1990, despite the fact that he was unemployed for six months, the debtor's income rose to approximately $21,000 and he expected this increase to continue. In 1991, however, he was laid off from his place of employment. Haig testified that he expected his unemployment benefits to resume after he was laid off, and in making purchases, he relied on that expectation. However, he did not receive unemployment benefits. It was not until April 1991, that Haig again found employment.

At the time of the filing of his bankruptcy, Haig had eight credit cards in his name. The two credit cards in issue in this case, a Citibank Preferred Visa, Account No.: 4271–3821–1626–0817 and Citibank Preferred MasterCard, Account No.: 5410–6548–4222–8212, had by far the highest balances, and had been charged to the credit limits. The Court has reviewed the documentary exhibits, including the monthly charge statements for the two accounts in issue. An analysis of each is helpful.

■ *The Preferred MasterCard.* The evidence shows that the debtor had a credit limit on this card of $5,000, $3,200 of which had been charged a year prior to the filing of the petition in bankruptcy.[2] The fact that there was such a substantial balance nearly one year prior to the bankruptcy is not consistent with a fraudulent use (within the meaning of Section 523(a)) of the card. Additional charges in December, January and February brought the balance to approximately $4,800. Haig's last payment on the account was credited on January 14, 1991, about the time he was laid off from

his job. He was apparently unable to make a payment in February when it came due.

*The Preferred Visa.* The evidence shows that the debtor had a credit limit on this card of $6,500, $3,500 of which had been charged prior to July 1990. By February 1991, the card had been charged to the credit limit. Again, the fact that there was a substantial balance nearly one year prior to the bankruptcy is not consistent with a fraudulent use of the card. Further, the credit limits were reached several months prior to the time Haig states that he first considered filing bankruptcy, not on the eve of the filing. *See Hable,* 107 B.R. at 358 ("It is clear that this is not a case which involves what is colloquially referred to as 'loading up' on the eve of bankruptcy. The fact of the matter is these charges were apparently incurred substantially prior to the Debtors' decision to seek bankruptcy.").

According to his uncontradicted testimony, it was not until May 1991, that Haig considered filing a bankruptcy petition; the petition was not filed until June 14, 1991. Haig states that he intended to repay the charges and in fact believed he could repay the charges. In January, when he was laid off, he believed he would be able to receive unemployment; when it became apparent that he would not receive unemployment, Haig and his wife rented space in their home to garner additional income. Haig's wife worked full time and made the payments on the credit cards as long as she was able. Though he did not begin working again until April, Haig believed he would earlier find work: he was actively looking and in fact did some free-lance work.

Finally, it is important to note that, while testifying, Haig presented demeanor consistent with truthfulness. He explained that the cash advances received were used to pay bills. He intended to pay all of his bills, and intended to pay the charges when he made them. However, the pressures of the economy, the loss of his job, and the lack of unemployment compensation forced him to file this bankruptcy proceeding.

---

**2.** The Chapter 7 Voluntary Petition was filed on   June 14, 1991.

Haig's income was previously quite high and he apparently expected it to rise, as it had in the past. The Court believes Mr. Haig: his demeanor and the evidence presented are consistent with the circumstances of the honest debtor who is entitled to the "fresh start" in bankruptcy. The Court finds no evidence which indicates that Haig made any fraudulent statement to the plaintiff, nor misrepresentations. While Haig may not have acted wisely, upon hearing his testimony and viewing his demeanor, the Court finds as a factual matter that there was no fraudulent intent with respect to the use of the credit cards at issue.

A separate judgment will be entered in accordance with the foregoing.

IT IS SO ORDERED.

### JUDGMENT

THIS ACTION came on for trial before the Court, the Honorable Mary Davies Scott, Bankruptcy Judge, presiding, and the issues having been duly tried and a decision having been duly rendered, it is hereby

ORDERED that the debts owed to the plaintiff, CITIBANK (SOUTH DAKOTA), N.A., are discharged in this Chapter 7 Bankruptcy, and that the adversary proceeding be dismissed on the merits.

IT IS SO ORDERED.